UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21043-CIV-SEITZ/O'SULLIVAN

R.J.,

      Plaintiff,

v.

ANDREA AZIA, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Plaintiff's Motion to Determine Amount of Florida Medicaid Lien Attaching to Settlement Proceeds (DE# 4/2/10). This matter was referred to the undersigned by the Honorable Patricia A. Seitz in accordance with Rule 1 of the Magistrate Rules of the Southern District of Florida (DE# 7/7/10). Having carefully considered the motion, the response, the reply thereto, and the court file and the applicable law, and having heard argument from counsel, the undersigned recommends that the relief sought in the Plaintiff's Motion to Determine Amount of Florida Medicaid Lien Attaching to Settlement Proceeds (DE# 4/2/10) be **GRANTED in part** and **DENIED in part**.  The Agency for Health Care Administration's ("AHCA") Medicaid lien should be paid in full from the proceeds of the settlement in this action.

## INTRODUCTION

The plaintiff settled the federal claims asserted in this action against eleven case workers for allegedly violating her constitutional rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution during the fifteen years that

she was in the foster care system in Florida.   As part of the settlement and in exchange

for a Release of Claims and a Hold Harmless and Indemnity Agreement, the eleven

defendants agreed to pay the plaintiff $750,000.

The Agency for Health Care Administration ("AHCA") asserted a Medicaid lien in

the amount of $153,032.75 for medical services paid by Medicaid that the plaintiff

received while she was in the foster care system.  The plaintiff objects to and seeks to

reduce the Medicaid lien in the amount of $120,380.96 "on the grounds that the

services associated with those charges were not 'as a result of' conduct of third

parties but, instead, constituted part of the constitutional claims at issue in this action."

Pl.'s Motion at p. 2 (DE# 51, 4/2/10).

The plaintiff argues that AHCA is not entitled to seek reimbursement from the

settlement proceeds for the full amount of its Medicaid lien.  The plaintiff relies on her

interpretation of the statutory language "as a result of" in the Medicaid Third-Party

Liability Act.  See Fla. Stat. § 409.910.  As explained below, the plaintiff's motion should

be denied because there is no basis in law or fact to warrant a reduction of AHCA's

Medicaid lien in this action.  AHCA's Medicaid lien should be paid in full from the

proceeds of the plaintiff's settlement in this action.

## **FACTUAL BACKGROUND**[1]

1.  After aging out of the foster care system in Florida, the plaintiff filed a civil

rights action pursuant to 42 U.S.C. § 1983, *et seq*.  In her Second Amended Complaint

---

[1]The facts stated in the Factual Background are based on unverified allegations
of the Amended Complaint and unsworn statements made in the plaintiff's motion.
Neither party submitted affidavits or any other form of sworn evidence.

(DE# 2, 5/7/09), the plaintiff named eleven former case workers as defendants, who were agents and/or employees of the Department of Children and Families ("DCF"). The plaintiff alleged damages, including personal injuries, resulting from the defendants' failure to secure a stable and therapeutic foster home for the entire fifteen (15) years of the plaintiff's time in foster care in violation of the U.S. Constitution.

2.   Among the general allegations, the plaintiff asserted that the "Defendants failed to protect her from years of physical, emotional, and sexual abuse by her caretakers and subjected her to forty (40) changes in placement...."  Second Amended Complaint ¶ 5 (DE# 30, 8/19/09 ).

3.   In her "General Factual Allegations," the plaintiff maintained that "[d]uring her fifteen (15) years in foster care, R.J. was repeatedly subjected to bizarre punishment, neglect, and physical, emotional, and sexual abuse." Id. at ¶ 76.

4.   The plaintiff further alleged that "R.J. developed serious psychiatric conditions as a result of the trauma and abuse she suffered in foster care."  Id. at ¶ 79.

5.   The Amended Complaint also asserted that "R.J. did rapidly deteriorate in her psychiatric conditions and was ultimately institutionalized in several locked facilities." Id. at ¶ 85.  "Notwithstanding the advice of treatment professionals, Defendants failed to secure an appropriate therapeutic setting for R.J. to address her serious medical needs."  Id. at ¶ 87.  "R.J. was further victimized and abused at these locked facilities." Id. at ¶ 88.

6.   The plaintiff maintained that "[t]he acts of omission and commission complained of, resulting in violation of R.J.'s civil rights, were a continuing tort, extending from the time R.J. entered the foster care system in 1990 through the time

3

that she aged out of the foster care system, on April 21, 2005." Id. at ¶ 89.

7.  She further alleged that "[a]lthough [she] came into foster care at nearly three (3) years of age without any psychiatric diagnoses, [her] traumatic experiences in the foster care system, including repeated abuse and the failure to receive necessary treatment for her serious medical needs, have caused her to suffer from severe psychiatric disorders ...." Id. at ¶ 346.

8.  The claims against each individual defendant in Counts I through XI include an allegation that "[a]s a direct result of Defendant['s] ... deliberate indifference, R.J. has suffered physical injury and psychological trauma, pain and suffering, discomfort, deterioration, disfigurement, loss of the ability to enjoy life, and suffered other reasonably foreseeable compensatory damages." See, e.g., id. at ¶ ¶ 355, 367, 378, 390, 402, 414, 426, 438, 451, 462, and 472.

9.  On December 18, 2009, the parties reached an amicable settlement. The Final Report of Mediation states that the "[c]ase completely SETTLED."  (DE# 47, 12/21/09)

10.  The parties executed a Release of Claims (DE# 52-1, 7/1/10) that provides a general release of all claims that were asserted or may have been asserted against the defendants, DCF, and its agents, successors in interest, employees, etc.,

> including any and all claims for personal injuries, psychological injuries, pain and suffering, medical expenses, mental health care, counseling, special training or education, hospital expenses, nursing care, assisted living expenses ... and any other losses or expenses arising out of, or connected with, or in anywise [sic] resulting from the care rendered to [the plaintiff] by the persons or entities described above, to the date of these presents, specifically including all claims which were or could have been asserted by [the plaintiff] in *RJ v. Andrea Azia, et al.* pending in the United States District Court for the Southern District of Florida, under Case No.

09-CV-21043-Seitz-O'Sullivan.

Id.

11.  In a letter dated January 6, 2010, the plaintiff's counsel advised Ms. Valerie

Walker, ACS State Healthcare, Florida TPL Recovery Unit, that plaintiff's counsel

"[found] no documents which demonstrate that [the plaintiff] was ever provided services

resulting from injuries claimed in this litigation...."  Additionally, the letter requested that

Ms. Walker advise immediately if she has information to the contrary.  Pl.'s Motion at p.

6, ¶ 22 (DE# 51, 4/2/10; Ex. A)

12.  AHCA notified R.J. that the Medicaid Lien was $153,032.75 and that she

was responsible for repaying the entire amount of Medicaid services pursuant to the

Act.  Pl.'s Motion at p. 6, ¶ 23 (DE# 51, 4/2/10; Ex. B - a redacted copy of the detailed

payment list)

13.  In a letter dated January 29, 2010, Ms. Walker replied to the January 6,

2010, letter and advised that the preliminary Medicaid lien was $153,032.75 and that

pursuant to Section 409.910, the Florida Agency for Health Care Administration (AHCA)

is entitled to be reimbursed from any settlement, judgment or award received by or on

behalf of the plaintiff from any payments designed to compensate your client for

medical expenses and injuries received as a result of this incident.  .  Pl.'s Motion at p.

6, ¶ 24 (DE# 51, 4/2/10; Ex. C)

14.  On April 2, 2010, Plaintiff's Motion to Determine Amount of Florida Medicaid

Lien Attaching to Settlement Proceeds was filed.  (DE# 51)  AHCA, a non-party, filed its

response.  (DE# 52, 7/1/10) The plaintiff filed a reply.  (DE# 57, 7/30/10)

15.  The undersigned heard argument on the motion at a status conference on

August 4, 2010.  The motion is ripe for disposition.


## DISCUSSION

The plaintiff seeks a substantial reduction (i.e. $120,380.96) of the Medicaid lien asserted by AHCA against the settlement proceeds that she secured in this civil rights action.  Essentially, the plaintiff challenges the Medicaid lien to the extent that it seeks reimbursement for medical services provided by Citrus Health Network, Inc. ("Citrus Health") in the amount of $88,401.44 for the period between March 22, 2001 and August 21, 2002; and the medical services provided by Children's Home Society in the amount of $31,979.52 for the period of August 27, 2002 to April 21, 2005.  Neither Citrus Health Network nor Children's Home Society were defendants in this action.[2] The plaintiff contends that the services rendered at these facilities were premised on inadequate and inaccurate mental health diagnoses, were contrary to her psychiatric diagnoses, and were not in response to her underlying problems.  See Pl.'s Motion ¶¶ 13, 26 (DE# 51, 4/2/10).  The plaintiff concedes that AHCA is entitled to a Medicaid lien in the amount of $32,651.79 for expenses incurred by other medical providers.

Relying on her own interpretation of Sub-section 409.910(6)(c) of the Florida Statutes and without citing any case law, the plaintiff argues that "AHCA is only entitled to seek reimbursement from settlement funds paid to a Medicaid receipt [sic] for healthcare provided by Medicaid that was 'as a result of' the injury that was the subject

---

[2]In her reply, the plaintiff reveals that the two-year statute of limitations governing negligence claims against healthcare providers was considered when she decided who to name as defendants in this action.  Reply at p. 5 n.3 (DE# 57, 7/30/10).

of the litigation and not the services that contributed to causing the injury." Id. at ¶ 20.

The plaintiff further contends that "AHCA is not entitled to seek reimbursement from the settlement funds for *all* healthcare provided to a Medicaid recipient through the Medicaid program regardless of whether or not the services were 'as a result' of the conduct of the third party paying the settlement funds."  Id. at  ¶ 21 (citing Fla. Stat. § 409.910(12) providing "Only the following benefits are not subject to the rights of the agency: benefits not related in any way to a covered injury or illness ....) (emphasis in original).

The plaintiff contends that she remained in Citrus Health Network for a period of approximately six months after Citrus Health Network recommended that she be discharged.  In her motion, the plaintiff also claims that she "continued to be physically, emotionally, and/or sexually abused while confined in the locked psychiatric program operated by Citrus Health Network and the residential facilities operated by Children's Home Society." Id. at ¶ 15.  Thus, the plaintiff asserts that the services provided by Citrus Health Network and Children's Home Society contributed to causing her injury and thus, were not furnished "as a result" of "the conduct of the third party paying the settlement funds."  Pl.'s Motion at pp. 5-6  ¶  21 (citing Fla. Stat. § 409.910 (12)).

As the plaintiff acknowledges in her Motion, Sub-section 409.910(12) of the Act excludes benefits that are "**not related in any way** to a covered injury or illness."  Fla. Stat. § 409.910 (12) (emphasis supplied).  Plaintiff's position that her settlement with the eleven case workers is "not related in any way" to the services that she received at

Citrus Health Network and Children's Home Society lacks merit and is belied by the allegations in her Second Amended Complaint.

AHCA maintains that the full amount of its Medicaid lien ($153,032.75) attaches to the plaintiff's unallocated settlement funds.  AHCA relies on the state and federal court decisions that have held that courts should apply the allocation formula prescribed by Sub-section 409.910(11) (f).  Fla. Stat. § 409.910(11) (f) (2009).  AHCA argues that the plaintiff has failed to present a sufficient basis to depart from case law and to reject the Florida statutory formula for determining the Medicaid lien in this case.  Response at p. 8 (DE# 52, 7/1/10).

AHCA argues that the plaintiff's motion to reduce the Medicaid lien should be denied for several reasons: 1) the motion is not supported by the law or the facts; 2) the motion is belied by the allegations in the plaintiff's complaint; 3) although the motion alleges misconduct on the part of Citrus Health Network and Children's Home Society, the plaintiff's complaint did not name either of these providers as defendants and did not articulate any claims against them; 4) the plaintiff has failed to cite any case law to support her position that AHCA's Medicaid lien on the settlement proceeds should be limited; 5) the plaintiff's suggestion that the defendants would pay intangible damages such as pain and suffering in lieu of hard fast medical damages is contrary to general practice and defies common sense; and 6) the plaintiff has misread the statute and has failed to give meaningful effect to its operative language.  (DE# 52, 7/1/10)

## I.    Florida's Medicaid Third-Party Liability Act

Medicaid paid for certain medical services that the plaintiff received while she was in Florida's foster care system.  Medicaid, 42 U.S.C. § 1396 *et seq.,* is a

cooperative program that provides federal and state medical care funding for certain individuals who are unable to afford their own medical costs. Englich v. Agency for Healthcare Admin., 916 So. 2d 994, 995 (Fla. 4th DCA 2005) (citing Am. Med. Ass'n v. Matthews, 429 F. Supp. 1179, 1192 (N.D. Ill. 1977)).  When a state voluntarily chooses to participate in Medicaid, it must comply with the requirements of Title XIX of the Social Security Act of 1965 and applicable regulations.  See Alexander v. Choate, 469 U.S. 287, 290 n.1 (1985) (citation omitted)).

The Florida Legislature enacted the Medicaid Third-Party Liability Act to comply with the federal mandate and to facilitate the recovery of state funds. Englich, 916 So. 2d at 995 (citing Fla. Stat. 409.910 (1999) and 42 U.S.C. § 1396(A)(25) (2000); Agency v. Health Care Admin. v. Estabrook, 711 So. 2d 161, 163 (Fla. 4th DCA 1998)).; see 42 U.S.C. § 1396k(b) (requiring "any amount collected by the State ... shall be retained by the State as is necessary to reimburse it for medical assistance made on behalf of an individual ....").  There is no exclusion for monies paid for medical services which might later be determined to be unwarranted, ill advised or "part of constitutional claims."  In the decision in which the Supreme Court of Florida determined the constitutionality of the Third-Party Liability Act, it warned courts to

> "be cautious when evaluating choices made by the legislative branch as to the appropriate funding for programs it has deemed important to the public welfare.  We must avoid unnecessarily limiting the funding options available to the legislature when addressing today's policy problems."

Id. (quoting Agency of Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So. 2d 1239, 1243 (Fla. 1996), cert. denied, 520 U.S. 1115 (1997)).

Florida's Medicaid Third Party Liability Act ("Act") governs the determination of

the amount of AHCA's Medicaid lien and mandates that:

> [a]fter the agency has provided medical assistance under the Medicaid program, it shall seek full recovery of reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits, but not in excess of the amount of medical assistance paid by Medicaid ....

Fla. Stat. § 409.910(4)(2009). The Act limits AHCA's recovery to half of the tort recovery, after subtracting attorneys' fees (at a rate of 25%) and costs. Fla. Stat. § 409.910(11)(f)(1) (2009). Sub-section 409.901(6)(c) provides in pertinent part:

> The agency is entitled to, and has, an automatic lien for the full amount of medical assistance provided by Medicaid to or on behalf of the recipient for medical care furnished **as a result of any covered injury or illness for which a third party is or may be liable**, upon the collateral, as defined in s. 409.901.

Fla. Stat. § 409.901(6)(c) (emphasis added). "Collateral" is defined as:

> (a) Any and all causes of action, suits, claims, counterclaims, and demands that accrue to the recipient ... **related to** any covered injury, illness, or necessary medical care, goods, or services that necessitated that Medicaid provide medical assistance.
> (b) All judgments, settlements, and settlement agreements rendered or entered into and **related to** such causes of action, suits, claims, counterclaims, demands, or judgments.

Fla. Stat. § 409.901(7)(a), (b) (emphasis added). The Act further provides in pertinent part:

> [e]xcept as otherwise provided in this section, notwithstanding any other provision of law, the entire amount of any settlement of the recipient's action or claim involving third-party benefits, with or without suit, is subject to the agency's claims for reimbursement of the amount of medical assistance provided and any lien pursuant thereto.

Fla. Stat. § 409.910(11)(e) (2009).[3]

---

[3]Florida has a statutory cap that limits the agency's recovery to fifty percent (50%) of the judgment, award or settlement of a Medicaid recipient's tort action after

Pursuant to the Act, AHCA has at least three mechanisms to recoup its expenditures: 1) the "automatic lien" for the full amount of medical assistance provided by Medicaid; 2) AHCA is "automatically subrogated" to any rights to third-party benefits; and 3) the "automatic assignment" to AHCA of the recipient's rights to any third-party benefits.  See Eastabrook, 711 So. 2d at 164 (quoting Fla. Stat. § § 409.910(6)(a),(b), and (c)).

**II.    The Settlement Funds Are Related to the Claims Asserted in this Action**

   **A.    The Allegations in the Second Amended Complaint Negate
            the Plaintiff's Argument that the Settlement Funds Are Not Related to
            the Claims against the Case Workers**

In her Motion, the plaintiff argues that AHCA's Medicaid lien for services provided by Citrus Health Network and Children's Home Society should not attach to her settlement of the constitutional claims asserted against the eleven case workers. She argues that

> the services rendered between 2001 and 2005 by those providers were
> not 'as a result' [of] the negligence of third parties.  Rather, those services
> formed in part the basis of her civil rights claim alleging indifference to her
> serious medical needs and her right to be free from unlawful confinement
> causing the very harm for which she was seeking damages.

Pl.'s Motion p. 6, ¶ 25 (DE# 51, 4/2/10).  The plaintiff contends that

> [t]he services provided to R.J. by the Citrus Health Network and Children's
> Home Society were premised on inadequate and inaccurate mental health
> diagnoses and the treatment was never designed to address her

---

attorney's fees (at a rate of twenty-five percent (25%)) and taxable costs under Florida law are distributed.  Fla. Stat. § 409.910(11)(f) (2009); see Russell v. Agency for Health Care Admin., 23 So. 3d 1266,1269 (Fla. 2d DCA 2010); Smith v. Agency for Health Care Admin., 24 So. 3d 590, 591 (Fla. 5th DCA 2009).  The Medicaid lien at issue is well below the statutory cap.

>underlying problems.  Had those providers performed an adequate
>assessment of R.J. or obtained all of the necessary background
>information regarding her mental health conditions and/or problems, those
>providers would have known that her placement in their respective
>programs was contrary to therapeutic needs.

Id.  pp. 6, ¶ 26 (DE# 51, 4/2/10).  In her Reply, the plaintiff argues further that

>the Defendants knowingly misidentified R.J. as a defiant, disruptive teen
>and, beginning in 2001, placed her in the residential psychiatric programs
>operated by Citrus Health Network and Children's Home Society, which
>placements Defendants knew were completely contrary to the
>recommendations of the professionals treating R.J., thus forming R.J.'s
>unlawful confinement claim and her claim that she failed to receive
>appropriate healthcare treatment.

Reply p. 4 (DE# 57, 7/30/10).  The crux of the plaintiff's argument is that Citrus Health

Network, Inc. and Children's Home Society contributed to the plaintiff's constitutional

claims rather than providing medical care to the plaintiff.  The plaintiff's argument

ignores the Act's straightforward and express definition of "third party," which includes :

>an individual, entity, or program, excluding Medicaid, that is, may be,
>could be, should be, or has been liable for all or part of the cost of medical
>services related to any medical assistance covered by Medicaid....

Fla. Stat. § 409.901(27).

The allegations asserted in her Second Amended Complaint belie the plaintiff's

argument that AHCA's Medicaid lien should be reduced for the services provided by

Citrus Health Network and Children's Home Society.   Among the general allegations of

her Amended Complaint, the plaintiff alleged that

>[a]s a result of the Defendants' failures to ensure appropriate treatment for
>her serious medical needs and to place her in a stable, safe, and
>therapeutic foster home, R.J.'s psychiatric conditions rapidly deteriorated
>during her years in foster care.

Amended Complaint ¶ 260 (DE# 2, 5/7/09).  The plaintiff also alleged that although she

had no psychiatric diagnoses when she entered the foster care system, her traumatic experiences in the foster care system "caused her to suffer from severe psychiatric disorders ...." Id. at ¶ 260 (DE# 2, 5/7/09). The plaintiff repeatedly and expressly alleged that the defendants "demonstrated deliberate indifference to R.J.'s right of physical safety and to treatment for her serious medical needs" primarily by leaving her in unsafe and inappropriate foster homes during her adolescent years, which "ultimately resulted in R.J.'s confinement in various locked mental health units and facilities." Id. ¶¶ 436, 449, 460.  The Amended Complaint makes abundantly clear that the plaintiff was suffering from severe psychological illness,[4] which required a secure institutional setting for her safety and the safety of others, by the time she was admitted to Citrus Health Network, Inc. and Children's Home Society.  See Second Amended Complaint ¶¶ 120, 123, 126, 130, 131-132, 134-135, 138-139, 140, 142, 152, 436, 449, 460. (DE# 30, 8/19/09).

In each of the eleven counts asserted against the individual defendants, the plaintiff claimed the following damages:

[a]s a direct result of Defendant['s] ... deliberate indifference, R.J. has suffered physical injury and psychological trauma, pain and suffering, discomfort, deterioration, disfigurement, loss of the ability to enjoy life, and suffered other reasonably foreseeable compensatory damages.

---

[4]According to the Amended Complaint, by the time the plaintiff was 13, and before she was admitted to either Citrus Health Network or Children's Home Society, the plaintiff had run away from facilities on numerous occasions, lived for weeks and months on the streets of Miami where she was raped and contracted a sexually transmitted disease, assaulted a facility staff member who planned to press charges, was kicked out of a facility because she was striking out at "other little girls," attempted suicide, refused to attend school, and had been repeatedly placed in Juvenile Detention for drug and alcohol abuse.  See Second Amended Complaint ¶¶ 120, 123, 126, 130, 131-132, 134-135, 138-139, 140, 142, 152, 436, 449, 460. (DE# 30, 8/19/09).

Id. at ¶ 355 (DE# 30, 8/19/09).  Although not expressly stated, "reasonably foreseeable compensatory damages" implicitly includes medical expenses in light of the personal injuries alleged in her Second Amended Complaint.

The Second Amended Complaint expressly alleges the disorders that resulted from earlier deprivations of her rights while in foster care for which the plaintiff received Medicaid funded treatment at Citrus Health Network and Children's Home Society. Where, as here, the settlement funds are related to the claims that required medical services that were furnished to the plaintiff and paid by Medicaid, AHCA has an automatic lien for the full amount of the medical expenses paid by Medicaid.  See Fla. Stat. §§ 409.901(6)(c), (7)(a), and (7)(b) (2009); see also State of Florida, Agency for Health Care Admin. v. Wilson, 782 So. 2d 977 (Fla. 1st DCA 2001); Russell v. Agency for Health Care Admin., 23 So. 3d 1266 (Fla. 2d DCA 2010).

### B.   In Exchange for the Settlement, the Plaintiff Expressly Released the Defendants from Claims for Personal Injuries, Psychological Injuries and Medical Expenses, Among Others, that Were Asserted or Could Have Been Asserted in this Action

The plaintiff settled her constitutional claims against the defendants for $750,000.  The plaintiff and the defendants executed a Release of Claims and the plaintiff executed a Hold Harmless and Indemnity Agreement in favor of the defendants to protect the defendants from liability for medical liens, among others.  In the Release of Claims, the plaintiff expressly released the defendants from

> any and all claims for personal injuries, psychological injuries, pain and suffering, medical expenses, mental health care, counseling, ... including all claims which were or could have been asserted by [the plaintiff in this action].

14

Release of Claims (DE# 52-1, 7/1/10).  Although AHCA is not bound by the parties'

characterization of the claims settled without having participated in the settlement,[5] the

release in this action supports AHCA's position that the unallocated settlement funds

include claims for medical expenses that were paid by Medicaid.  See Fla. Stat. §

490.910(7)(2009) ("No release or satisfaction of any cause of action, suit, claim, ...

settlement, or settlement agreement shall be valid or effectual as against a lien under

this paragraph, unless the agency joins in the release or satisfaction or executes a

release of the lien...."); see also Fla. Stat. §  490.910(13)(2009) ("... no settlement,

agreement ... entered into or consented to by the recipient or his or her legal

representative shall impair the agency's rights....").  Pursuant to Sub-section

409.901(6)(c), AHCA has an automatic lien against the settlement proceeds for the full

amount of the medical services provided by Citrus Health Network and Children's Home

Society as a result of the alleged tortious conduct of the defendant case workers.  Fla.

Stat. § 409.901(6)(c).

### III.     Florida and Federal Case Law Hold That a Reduction of the Medicaid Lien Is Not Warranted

The plaintiff's motion is devoid of any state or federal case law to support her

position that the Medicaid lien should be reduced on the ground that the medical

services provided by Citrus Health Network and Children's Home Society were "not 'as

a result of' the conduct of third party's [sic] but, instead, constituted part of the

constitutional claims at issue in this case." (DE# 51, ¶ 4).  The plaintiff's argument has

---

[5]See Fla. Stat. §  490.910(13)(2009) ("... no ... "settlement agreement" ... entered into or consented to by the recipient or his or her legal representative shall impair the agency's rights....").

no legal or factual support.  There is no evidence to claim that the medical services identified and sought in the Medicaid lien were not in fact provided to the recipient by Citrus Health Network and Children's Home Society.  The plaintiff has no evidence to dispute the validity of the invoices presented to and paid by Medicaid for those services. Likewise, there is no evidence to dispute that the medical services provided by the residential facilities included treatment for psychological disorders, prescribed medications, physician fees, and other typical costs associated with in-house abuse treatment residency programs.

The plaintiff maintains that "[i]f [sic] defies logic that R.J.'s complaint would be, in part, based on claims of unlawful confinement and the failure to provide appropriate medical (mental health) treatment, but thereafter be forced to repay the State of Florida for the very services for which the settlement was achieved."  Reply p. 7 (DE# 57, 7/30/10).  Medicaid paid for the plaintiff's alleged tortious confinement and alleged inappropriate medical treatment at Citrus Health Network and Children's Home Society. The plaintiff settled with the eleven defendants for their alleged tortious conduct in causing her to be placed in those facilities.  Thus, the settlement funds are related to the alleged injuries caused by the settling defendants.  AHCA has an automatic lien against the unallocated settlement proceeds.

The Act itself, the public policy of Florida, and Florida and federal law support AHCA's position that it is entitled to assert the total amount of its Medicaid lien against the proceeds of the unallocated settlement. See Fla. Stat.  § 409.901(1)(providing the Legislative intent of the Act that Medicaid is to be the "payor of last resort..." and "is to be repaid in full from, and to the extent of, any third party benefits" and that "principles

16

of common law and equity ... are abrogated to the extent necessary to ensure full recovery by Medicaid from third-party resources"); see also  State Agency for Health Care Admin. v. Estabrook, 711 So. 2d 161, 164-65 (Fla. 4th DCA 1998) (recognizing that the Florida legislature "contemplate[d] collusion between the Medicaid recipient and settling third parties" and drafted Sub-section 409.910(11) in part to address that concern). Additionally, AHCA did not stipulate or in any other way agree that the amount constituting repayment of medical expenses is other than the portion derived from the application of the statutory formula set forth in Sub-section 409.910(11)(f). Fla. Stat. §  490.910(11)(f) (2009).

In State of Florida, Agency for Health Care Admin. v. Wilson, 782 So. 2d 977 (Fla. 1st DCA 2001), a Florida appellate court reversed a trial court that reduced a Medicaid lien by a pro rata share of the costs and expenses, including attorneys' fees, of the third-party medical malpractice action.  The appellate court in Wilson found that the distribution scheme under Florida's Third-Party Liability Act "provides, in a fairly straightforward manner, that after fees and taxable costs, 'one-half of the remaining recovery shall be paid to the agency up to the total amount of medical assistance provided by Medicaid.'" Id. at 979 (quoting Fla. Stat. § 409.910(11)(f)(1) (1999)).  The Wilson court held that AHCA was entitled to full recovery of its lien.  Id. at 980.

In Russell v. Agency for Health Care Admin., 23 So. 3d 1266 (Fla. 2d DCA 2010), the appellate court affirmed a state court's determination that AHCA was entitled to full satisfaction of its Medicaid lien from the proceeds of a settlement of a medical malpractice action.  In Russell, the plaintiff settled the medical malpractice claims of her child for $3 million.  AHCA asserted a Medicaid lien in the amount of $221,434.24.

17

Neither the settlement agreement nor the parties made any allocation of the amount recovered for the various elements of damages suffered by the Medicaid recipient.  The Florida appellate court determined that AHCA was entitled to full satisfaction of its lien because it did not exceed the 50% statutory cap in Sub-section 409.910(11)(f)(1).  Id. at 1267.

The Russell court rejected the appellant's argument that the Supreme Court's decision in Arkansas Dept. of Health & Human Svcs. v. Ahlborn, 547 U.S. 268 (2006), supported her position that AHCA was only entitled to one-tenth of its lien amount since plaintiff's settlement recovery was one-tenth of the value of damages opined by experts.  Russell, 23 So. 2d at 1268.  Unlike Russell and the plaintiff in this action, the State in Ahlborn, stipulated to the amount of the settlement attributable to medical expenses.  The appellate court in Russell explained that "[i]n Florida, a Medicaid recipient entering in a settlement of a tort claim with a third party does so against the backdrop of the fifty-percent allocation rule set for in section 409.910(11)(f)." Id. at 1269.  The Russell court noted that "the appellant failed to establish any basis for concluding that the lien asserted by AHCA extends to a portion of the settlement 'meant to compensate the recipient for damages distinct from medical costs.'" Id. (quoting Ahlborn, 547 U.S. at 272).

Wilson and Russell involved medical malpractice actions.  In both cases, the courts determined that the Medicaid lien applied to the full amount of the settlement proceeds.  By way of analogy, Wilson and Russell expose the flaw in the plaintiff's position that the residential psychiatric services provided by the Children's Home Society and Citrus Health Network, Inc., which were paid by Medicaid, should not be

18

2ecf2cfdaba17db8

reimbursed because 1) they were unnecessary (i.e. contrary to professional recommendations); and 2) they contributed to the elements of the plaintiff's constitutional claims.[6]  Inherent in any medical malpractice action is damage caused by the medical provider's negligence.

If this Court were to accept the plaintiff's argument, then it would follow that a Medicaid lien should not apply to the settlement proceeds of a medical malpractice action because the medical services should not have been performed the way that they were or were not (i.e. negligently).  Contrary to the plaintiff's position, courts have implicitly determined that when Medicaid has paid for the medical services, whether they be negligent or not, Medicaid, as the "payor of last resort," is entitled to be reimbursed from the settlement proceeds of the medical malpractice claim.  Like the plaintiff in Russell, the plaintiff in this action cannot show that the settlement amount includes compensation for damages distinct from medical costs.  As in Wilson and Russell, in the present action, the plaintiff's settlement does not allocate medical from non-medical damages.  Thus, no reduction is warranted.

In Scharba v. Braden, 22 Fla. L. Weekly Fed. D. 292, 2010 WL 1380121 *1 (M.D. Fla. 2010), the district court denied the plaintiff's motion to reduce AHCA's Medicaid lien against the proceeds of a personal injury settlement.  The district court

---

[6]Although the plaintiff's motion claims that the two residential providers engaged in misconduct, including inadequate assessment, diagnosis, care, treatment, and physical, emotional, and/or sexual abuse of the plaintiff, the Amended Complaint does not name either of the residential facilities as defendants and does not articulate these claims against them.  The placement of the plaintiff in these two residential facilities was made by the case workers who settled with her.  The Medicaid lien under the Act attaches to settlement funds of the third party who "is or may be liable" to the Medicaid recipient.

explained that "[t]o maintain the viability of the Medicaid system, federal law requires states to enact legislation to secure Medicaid's reimbursement from recipients' settlements with, or judgments or awards against, liable third parties." Id. at (citing 42 U.S.C. § 1396a(a)(25)).  Federal law further mandates that "states require Medicaid recipients to effect a comprehensive assignment of their rights as to claims against third parties in order to qualify for Medicaid benefits." Id. (citing 42 U.S.C. § 1396(k)).

Consistent with the federal Medicaid objectives, Florida's Act expressly provides that Florida Medicaid shall be "the payor of last resort." Id. at * 2 (quoting Fla. Stat. § 490.910(1)(2006)).  Additionally, the Florida Act grants an automatic lien on any third-party benefits to achieve recovery. Id. (citing  Fla. Stat. §  490.910(6)(b)).  Pursuant to sub-section 490.910(12):

> ... The agency's rights of recovery created by this section, however, shall not be limited to some portion of recovery from a judgment, award, or settlement.  Only the following benefits are not subject to the rights of the agency: **benefits not related in any way to a covered injury or illness**, proceeds of life insurance coverage on the recipient, such as coverage for property damage, which by its terms and provisions cannot be construed to cover personal injury or illness; proceeds of disability coverage for lost income; and recovery in excess of the amount of medical benefits provided by Medicaid after repayment in full to the agency.

Fla. Stat.  §  490.910(12)(2009) (emphasis added).  Clearly the services provided by Citrus Health Network and Children's Home Society are "related to" the injuries alleged against the eleven defendant case workers.  Stated another way, but for the alleged tortious conduct of the defendant case workers, the plaintiff would not have been placed in, remained in, or be treated by the residential facilities.

The fact that the plaintiff did not sue the two residential facilities directly does not

20

alter the outcome.  The plaintiff alleged that her mental health deteriorated while she remained in foster care which ultimately required her to be confined in certain locked facilities as a result of the defendants' failure to properly place her in a therapeutic foster home.   The Second Amended Complaint alleges that the defendants' alleged misconduct led to the treatment provided by Citrus Health Network and Children's Home Society.  It is undisputed that Medicaid paid for the medical services provided to the plaintiff by both residential facilities.

In Scharba, the plaintiff argued that the Ahlborn case "[stood] for the proposition that a state can not 'assert a lien against, and seek recovery of, a Medicaid recipient's *entire* settlement." Scharba, 2010 WL at  * 4 (emphasis in original). The Scharba court explained that "[t]he central issue in Ahlborn was not whether a state Medicaid agency could assert a lien against an entire settlement, but whether a state has a 'right to recover' more than 'just that portion of a judgment or settlement that represents payment of medical expenses.'" Id. (quoting Ahlborn, 547 U.S.  268, 275, 278 (2006)). In Ahlborn, the Supreme Court held that the provision of the Arkansas' statute was unenforceable because the state sought to impose a lien on settlement proceeds that it stipulated did not represent payments for medical care.    In Scharba, as in the present case, the parties did not stipulate as to or allocate the amount of the settlement attributed to medical damages.  Acknowledging the Florida appellate court's holding in Russell, the Scharba court held that the statutory formula in Fla. Stat. § 490.910(11)(f)(2009) governed the determination of the amount of AHCA's Medicaid lien.  As in Russell and Scharba, the settlement in the present action is unstructured

and does not designate an amount allocated for medical expenses.  Thus, sub-section 490.910(11)(f)(2009) controls the determination of the amount of AHCA's Medicaid lien in this action.

Because AHCA's Medicaid lien is well within Florida's fifty-percent statutory cap, the settlement proceeds are related to the plaintiff's alleged injuries, and the settlement is unstructured, AHCA is entitled to the full amount of its Medicaid lien from the plaintiff's $750,000 settlement.

<u>CONCLUSION</u>

Based on the foregoing Report and Recommendation, the undersigned respectfully recommends that the Plaintiff's Motion to Determine Amount of Florida Medicaid Lien Attaching to Settlement Proceeds (DE# 4/2/10) be **GRANTED in part** and **DENIED in part**.  The undersigned further respectfully recommends that the Court enter an Order directing that AHCA's Medicaid Lien in the amount of $153,032.75 be satisfied in full from the settlement proceeds between the plaintiff and the defendants in this action consistent with the statutory formula prescribed by Fla. Stat. 490.910(11)(f)(2009).

The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable **Judge Seitz**, United States District Court Judge.   Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  See LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); See Also, RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir.

1993).

       **RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida this   8th

day of November, 2010.

                                        _____
                                        JOHN J. O'SULLIVAN
                                        UNITED STATES MAGISTRATE JUDGE


Copies provided to:
United States District Judge Seitz
All counsel of record